UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

ANTHONY WALLACE,        )
                                     )
       Plaintiff,          )
                                     )
v.                              )     No.:   2:17-CV-159-TAV-MCLC
                                     )
RANDY LEE, Warden, *et al.*,    )
                                     )
       Defendants.     )

## MEMORANDUM AND ORDER

This is a pro se prisoner's civil rights action brought under 42 U.S.C. § 1983 by Anthony Wallace ("Plaintiff"), asserting numerous deprivations of his civil rights by 41 separate defendants [Doc. 2]. Also pending are Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] and his motion to appoint counsel [Doc. 3].

For the reasons that follow, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**. Upon initial screening, the Court finds that Plaintiff's complaint is sufficient at this stage to state a plausible claim against Defendants Bailey, Stiles, and Hathaway for violating Plaintiff's right to personal safety under the Eighth Amendment, and this case may proceed on that claim against those three defendants. However, Plaintiff has failed to state any other claim against any other defendant. Accordingly, all other claims and all other defendants will be **DISMISSED** from this action. Plaintiff's motion to appoint counsel [Doc. 3] will be **DENIED without prejudice**.

## I.     Motion for Leave to Proceed *in forma pauperis*

As an initial matter, according to Plaintiff's application for leave to proceed *in forma pauperis* [Doc. 1] and accompanying trust fund statement [Doc. 1-1], he lacks sufficient financial resources to prepay the filing fee for instituting a civil action.  Accordingly, Plaintiff's application for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED** and, in accordance with 28 U.S.C. § 1915(a)(1) of the Prison Litigation Reform Act ("PLRA"), he will be permitted to commence this action without *prepayment* of the filing fee.  However, pursuant to § 1915(b)(1) of the PLRA, he is not entitled to a waiver of that fee altogether and will be required to pay the full amount of the filing fee, including an initial partial filing fee, in installments as set forth in the PLRA.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) ("When an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceeding or over a period of time under an installment plan.  Prisoners are no longer entitled to a waiver of fees and costs").

Accordingly, Plaintiff will be **ASSESSED** the full filing fee of $350.00 for instituting a civil action.  *See* 28 U.S.C. § 1914(a).[1]  Pursuant to 28 U.S.C. § 1915(b)(1),

---

[1]  Because Plaintiff has been granted *in forma pauperis* status, the standard administrative fee of $50.00 for filing a civil action is not applicable.  28 U.S.C. § 1914(a); Judicial Conference of the United States, District Court Miscellaneous Fee Schedule # 14 (effective December 1, 2016).

the custodian of Plaintiff's inmate-trust account at the institution where he now resides[2] is **DIRECTED** to submit, as an initial partial filing fee, twenty percent (20%) of the greater of (1) the average monthly deposits to Plaintiff's account; or (2) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint. Thereafter, the custodian shall submit to the Clerk twenty percent (20%) of Plaintiff's preceding month's income credited to his account, but only each time the amount in the account exceeds ten dollars ($10.00), until the total $350.00 fee has been paid in full. 28 U.S.C. § 1915(b)(2). The Clerk is **DIRECTED** to forward a copy of this Order to the Court's financial deputy.

Payments should be sent to: Clerk, USDC; 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743. To ensure compliance with this fee-collection procedure, the Clerk is **DIRECTED** to mail a copy of this order to the custodian of inmate accounts at the institution where Plaintiff is now confined. The Clerk is also **DIRECTED** to furnish a copy of this order to the Court's financial deputy. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

---

[2] The Court's docket reflects that Plaintiff is incarcerated at the Northeast Correctional Complex. However, according to the Tennessee Department of Corrections' on-line Inmate Locator Service—which allows the public to track the location of state inmates—Plaintiff is currently incarcerated at Riverbend Maximum Security Institution. Pursuant to Fed. R. Evid. 201(c), the Court may take judicial notice of the information provided on the Inmate Locator Service. *See, e.g.*, *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (citing *Harvey v. Eichenlaub*, 2007 WL 2782249, at *1 (E.D. Mich. Sept. 24, 2007)). Accordingly, the Court will do so here and the Clerk is **DIRECTED** to update Plaintiff's address to Riverbend Maximum Security Institution, 7475 Cockrill Bend Boulevard, Nashville, Tennessee 37243-1048.

## II.    Screening

### A.    Screening Standard

The Prison Litigation Reform Act ("PLRA") directs district courts to screen prisoner complaints for cognizable claims and to dismiss *sua sponte* those that are frivolous, malicious, or fail to state a claim on which relief may be granted, or those that seek monetary relief against a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999).

In screening Plaintiff's complaint, the Court recognizes that a pro se pleading filed in a civil rights case is to be held to a less stringent standard than a formal pleading drafted by a lawyer; thus, the Court construes such pro se complaints liberally.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Nevertheless, a pro se complaint still must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), meaning that the factual content pled in the complaint must allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

This "facial plausibility" standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citations and internal quotation marks omitted).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555).  Nor does a complaint suffice if it tenders "naked

assertion[s]" devoid of "further factual enhancement." *Id*. (citing *Twombly*, 550 U.S. at 557).

The Sixth Circuit Court of Appeals has held that this facial plausibility standard, as articulated in *Twombly* and *Iqbal*, also "governs dismissals for failure to state a claim under [the PLRA] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

### B.     Plaintiff's Complaint

Plaintiff's complaint alleges that on April 20, 2017, he was released from the Security Management Unit ("SMU") to Unit 8 of the main compound at the Northeast Correctional Complex ("NECX") [Doc. 2 p. 5].  The next day, Plaintiff was informed by Lieutenant Bailey that several inmates associated with a gang known as the Vice Lords indicated that they would kill Plaintiff if he returned to the compound, in retaliation for Plaintiff previously having "stuck" a Vice Lord at the West Tennessee State Prison [*Id*.]. Plaintiff alleges that there had been an ongoing threat by the Vice Lords towards his life since around November 2014, when he was attacked in the main compound of NECX [*Id*.]. Despite being aware of the threat, Bailey allowed Plaintiff to return to Unit 8 of the main compound [*Id*.].  Plaintiff further alleges that he informed Ms. Stiles, his Mental Health Counselor, of his fears at every appointment and specifically expressed his fears to both Stiles and Nurse Practitioner Hathaway on June 12, 2017 [*Id*. pp. 5–6].

On June 19, 2017, Plaintiff alleges that he was assaulted by inmates Mann, Monholland and Smith, in Unit 8, at the direction of inmate Gerald White [*Id*. p. 6].  During

the assault, Plaintiff and his attackers all were pepper sprayed by unidentified officers [*Id*.]. Plaintiff was able to get away, and he returned to his cell to stop the bleeding on his face [*Id*.]. He then ran back downstairs to confront, White with whom he exchanged "words and punches," before Plaintiff ended up on the floor [*Id*.]. Two John Doe officers put him in a "very tight headlock" and "excessively choked" him "without any reasonable cause to do so" and without restraining White, despite the fact that White displayed a homemade weapon during the confrontation [*Id*.]. Plaintiff was released from the chokehold after about "ten to twenty seconds" when inmates Burns, Davis, Thomas and Merritt intervened [*Id*. p. 7].

Several hours later, four John Doe Tact-team officers "aggressively" escorted Plaintiff to medical for treatment of several injuries to his face and back [*Id*.]. Under pending investigation ("P.I."), he then was escorted to a cell in Unit 2, where he alleges the four John Doe Tact-team officers stripped him to his boxer shorts and left him in the "cold cell," without bed linens and without allowing him to take a shower to stop the pepper-spray from burning his body [*Id*.].

The following day, the same four John Doe Tact-team officers, led by Sergeant McCracken, brought inmates Thomas, Merritt, Burns and Davis into Unit 2 and placed them in cells near Plaintiff [*Id*. p. 8]. Two of Plaintiff's attackers, Monholland and Smith, also were locked up at the time, but Mann, the other attacker, and White, the purported mastermind, were never locked up "due to their gang affiliated influences and ties with the

administration" [*Id*.]. Plaintiff alleges that both should have been locked up under Tennessee Department of Corrections policy [*Id*.].

During the institutional inspection that same day, Plaintiff alleges that Sergeant McCracken and Warden Randy Lee informed Plaintiff that "you done fucked up" and that they did not want to talk to him [*Id*. p. 9]. After the investigation was concluded, McCracken "wrote up" Plaintiff for three disciplinary infractions [*Id*.]. Plaintiff alleges that McCracken never spoke to him or anyone else involved in the incident except for Mann and White [*Id*.].

Later that day, Plaintiff spoke to Megumi Britt in Mental Health and told her of the "ill-mannered behavior and corruption being displayed towards me by the administration" and also told her that he needed to take a shower. Britt indicated she would tell Unit Manager Walker about his condition so Plaintiff could take a shower, but Plaintiff never took one that day [*Id*.]. The following day, Plaintiff spoke to Assistant Warden Hampton and Unit Manager Walker, and they also indicated they did not want to talk to Plaintiff, which made it clear to him that the "administration was deliberately abusing, oppressing me because of the incident with the Vice Lords" [*Id*. p. 10]. Plaintiff again expressed his fears for his safety to Britt at Mental Health [*Id*.] On June 22, 2017, Plaintiff alleges that Corrections Officer ("C/O") Fisher threatened him after Plaintiff informed the Jane Doe nurse that he did not feel safe around the staff, although Corporal Giarusso did remove Fisher from the unit [*Id*.].

Plaintiff later was placed back in the SMU program at the direction of Warden Lee because, according to Moody, "Warden Lee is mad at you" [*Id*. p. 11]. On July 1, 2017, Fisher informed Plaintiff he was being moved to Unit 4, but Plaintiff refused to move [*Id*.]. Later, eight John Doe officers led by Sergeant Garcia arrived and threatened to beat up Plaintiff if he did not move [*Id*.]. Plaintiff was moved to Unit 4, where his television was confiscated "for no reason," the cell was "a mess," the walls leaked water, and the light fixture was hanging from the frame with electrical wires coming out [*Id*.]. The next day Corporal Ozzborne and C/O Sangent returned his television [*Id*.]. On July 3, 2017, Plaintiff was moved to Unit 1 by C/O Parks and C/O Jordan [*Id*. pp. 11–12].

On July 10, 2017, Plaintiff wrote to Commissioner Tony Parker about the "deliberate abuse" Warden Lee and his staff were conducting towards Plaintiff, but Parker never took any action concerning Plaintiff's safety [*Id*. p. 12].

### C.    Analysis

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Flagg Bros. v. Brooks*, 436 U.S. 149, 155–56 (1978); *Black v. Barberton Citizens Hosp.*, 1.34 F.3d 1265, 1267 (6th Cir. 1998). Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

Here, Plaintiff has not identified any specific constitutional bases for his § 1983 claims. Liberally construing Plaintiff's allegations and prayer for relief, the Court discerns that Plaintiff is attempting to assert claims under the Eighth Amendment to the United States Constitution for: (1) failure to protect; (2) excessive force; (3) verbal threats; and (4) conditions of confinement. In addition, he alleges in his request for relief that all of the defendants conspired to "oppress" his rights under the First, Second, Fifth, Eighth, and Fourteenth Amendments. Even affording Plaintiff's complaint a liberal construction, the Court finds that he has failed to state any plausible claim for relief under § 1983, except for his Eighth Amendment claim against Bailey, Stiles, and Hathaway for violation of his right to personal safety and right to be free from violence at the hands of other prisoners.

### 1.    Personal Involvement

As an initial matter, Plaintiff's complaint lists 41 separate defendants, including sixteen John/Jane Does. However, with respect to many of these defendants the complaint fails to allege any specific conduct which violated his civil rights.

To hold an individual defendant liable under § 1983, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (internal citation omitted). It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *Twombly*, 550 U.S. at 555 (holding that in order to state a claim, the plaintiff must make sufficient allegations to give a defendant fair notice of the claim).

The Sixth Circuit has found that, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal, even

under the liberal construction afforded to pro se complaints." *See Gilmore v. Corr. Corp. of Am.*, 92 Fed. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 Fed. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claim where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, 238 F.3d 421, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement for each defendant); *Rodriguez v. Jabe*, 904 F.2d 708, 1990 WL 82722 at *1 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Here, Plaintiff names as a defendant every character that is even peripherally involved in the broader narrative underlying his complaint, regardless of what their role in the events in question may have been. For example, he names as a defendant Corporal Giarusso, whose only involvement was the removal of C/O Fisher from Plaintiff's unit after Plaintiff alleges Fisher threatened him. He names as defendants Corporal Ozzborne and C/O Sangent, who did nothing but return his television, and C/O Parks and C/O Jordan, who merely moved him between units. John Doe # 15 and Jane Doe #16 appear to be the nurses who gave Plaintiff stiches. Case Manager Moody is described as having "no say-so" in Plaintiff's placement. He also lists as defendants Burns, Davis, Thomas, and Merritt, fellow inmates whom he identifies only as "witnesses."

In failing to allege and show what any of the above defendants did or did not do that violated his rights under the Constitution or laws of the United States, Plaintiff has not stated a claim for relief against any of them. Accordingly, the following defendants will be **DISMISSED** from this case for lack of personal involvement in any alleged deprivation of Plaintiff's rights: Case Manager Moody, Corporal Ozzborne, Corporal Giarusso, Megumi Britt, C/O Sangent, C/O Parks, C/O Jordan, Inmate Burns, Inmate Davis, Inmate Thomas, Inmate Merritt, John Doe #15, and John Doe #16.

### 2. Non-State Actors

Plaintiff also names as defendants Mann, Monholland, and Smith, the three inmates who allegedly attacked him, as well as the purported mastermind behind the attack, inmate Gerald White.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the purported deprivation of his rights was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Plaintiff has not presented any allegations by which

the conduct of his fellow inmates could be fairly attributed to the State. Accordingly, he fails to state a § 1983 claim against Mann, Monholland, Smith, and Gerald White, and they will be **DISMISSED** as defendants in this action.

### 3. Supervisory Liability

Plaintiff also has named various administrative officials at the prison as defendants. To the extent Plaintiff has made specific factual allegations against these administrative officials relating to a specific claim, those allegations will be addressed in the analysis of that specific claim. However, to the extent Plaintiff seeks to hold any administrative official liable based solely on his role as a supervisor, a theory of supervisory liability is unacceptable in a § 1983 case. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding that liability under § 1983 may not be imposed simply because a defendant "employs a tortfeasor"). The law is settled that § 1983 liability must be based on more than respondeat superior, or a defendant's right to control employees. *Taylor v. Mich. Dept. of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995). At a minimum, "a plaintiff must plead that the Government official defendant, through the official's own individual actions, has violated the Constitution" *Iqbal*, 556 U.S. at 676-77. Accordingly, any claims Plaintiff is seeking to raise against a prison administrator solely arising from his or her supervisory role will be **DISMISSED**.

### 4. Personal Safety

Plaintiff's complaint alleges that he was informed by Bailey that several inmates with gang affiliations had indicated that they would kill Plaintiff if he returned to the main compound, and that despite being aware of that threat, Bailey allowed Plaintiff to return to the main compound. He also alleges that he informed Stiles of his fears on numerous occasions and specifically expressed his fears to both her and Hathaway a week before he was attacked.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). This right includes the right be free "from violence at the hands of other prisoners." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, a plaintiff must show that a defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).

Here, Plaintiff's complaint alleges that Lt. Bailey was aware of the threats made against Plaintiff by the Vice Lords but allowed him to return to the main compound. He alleges that Ms. Stiles and Ms. Hathaway also were aware of those threats. Liberally construing the complaint, the Court finds that Plaintiff's allegations, if accepted as true, are sufficient at the screening stage to state a plausible claim under § 1983 and the Eight

Amendment against Lt. Bailey, Ms. Stiles, and Ms. Hathaway, for failure to protect Plaintiff from violence at the hands of his fellow inmates. This case will proceed against those three defendants on this claim.

### 5. Excessive Force

Plaintiff's complaint alleges that, during his altercation with White, he "somehow end[ed] up on the floor, faced[sic] down, in a very tight (headlock) overly excessively being choked out by two John Doe officers without any reasonable cause to do so" [Doc. 2 p. 6]. After about "ten or twenty seconds" the two John Doe officers released him from the headlock due to fellow inmates intervening [*Id.* p. 7].

The Eighth Amendment prohibits the imposition of "cruel and unusual punishments" upon prisoners. U.S. Const. amend. VIII. However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs*, 315 F.3d at 556 (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

Because Plaintiff was a convicted prisoner at the time of the relevant incident, the Court examines his excessive force claim under the Eighth Amendment. *Kingsley v.*

*Hendrickson*, 135 S. Ct. 2466, 2475 (2015). In determining whether prison officials violated the Eighth Amendment by "inflict[ing] unnecessary and wanton pain in using force upon a prisoner," the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)); *see also Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).

Here, upon careful consideration of Plaintiff's allegations the Court finds that Plaintiff has failed to state a plausible claim of excessive force against the two John Doe officers. It is clear from the allegations of Plaintiff's complaint that the officers were engaged in an effort to break up a fight between Plaintiff and White. Plaintiff acknowledges that he and White were exchanging punches between the two John Doe officers and "somehow" Plaintiff ended up on the floor. He then alleges that two John Doe officers put him in a tight headlock and "excessively choked" him. However, even construing the complaint liberally, there is no basis for the Court to conclude that under the facts as Plaintiff has alleged them that the officers were acting maliciously or sadistically to harm him, rather than acting in a good faith effort to restore discipline. And Plaintiff makes no allegation that he suffered any pain, injury, or harm from the incident. A de minimis use of physical force that is not "repugnant to the conscience of mankind" does not violate constitutional rights, *Hudson*, 503 U.S. at 9, and "a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim," *Wilkins*

*v. Gaddy*, 559 U.S. 34, 38 (2010).  Under these circumstances, the Court finds that Plaintiff has failed to state a plausible claim of excessive force, and this claim will be **DISMISSED**.

### 6.     Verbal Threats

Plaintiff's complaint alleges that C/O Fisher threatened him and said "I'll kick your ass, boy" [Doc. 2 p. 10].  Plaintiff further alleges that on a separate occasion Sergeant Garcia and eight John Doe officers threatened to beat him up and tase him [*Id.* p. 11].  Plaintiff's allegations are insufficient to state a claim upon which relief may be granted.

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987).  Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude.  *See Torres v. Oakland Cty.*, 758 F.2d 147, 152 (6th Cir. 1985).

Thus, Plaintiff's allegations that Fisher, Garcia, or the eight John Doe defendants threatened him, and that Fisher used a degrading epithet, although unprofessional and deplorable, do not rise to a deprivation of constitutional dimensions.  *See Ivey*, 832 F.2d at 954-55.  Accordingly, Plaintiff's complaint fails to state an Eighth Amendment claim against these defendants arising from their alleged threats, and this claim will be **DISMISSED.**

### 7. Conditions of Confinement

Plaintiff's complaint contains numerous allegations which the Court discerns as claims regarding the conditions of his confinement. Specifically, Plaintiff alleges that, while he was under pending investigation, the four John Doe Tact-team officers "stripped him to his boxer shorts" and placed him in a "cold cell without any bed linens or shower" [Doc. 2 p. 7]. Later, when he was moved into Unit 4, Plaintiff alleges that his television was confiscated "for no reason," that his cell was "a mess," the "walls leaked water," and the "light fixture was hanging off the frame with electrical wires coming out" [*Id*. p. 11].

"[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). In claims regarding conditions of confinement, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. *Hudson*, 503 U.S. at 8–9. An extreme deprivation is one "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).

The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Even construing Plaintiff's complaint liberally, the Court finds that none of the conditions Plaintiff asserts in his complaint rise to the level of an "extreme deprivation" that would be required to state a plausible Eighth Amendment claim. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). That is why "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Thus, Plaintiff's allegations—a cold and messy cell, a confiscated television, leaky walls, and a broken light fixture—while unpleasant, do not constitute "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement," *Rhodes*, 452 U.S. at 348. Indeed, these concerns amount to no more than routine discomforts, which do not violate the Eighth Amendment.

Additionally, in order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Here, Plaintiff has failed to allege that any specific individual acted with deliberate indifference to his health and safety with regard to the

conditions of his confinement, or that any of those conditions posed a serious risk to his health or safety.

Finally, Plaintiff's stay in both of the cells of which he complains was short-lived. His television was returned in 24 hours, and it appears that he only spent around two days in the "messy" cell in Unit 4. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

Because Plaintiff has failed to set forth facts supporting a plausible conditions-of-confinement claim under the Eighth Amendment, this claim will be **DISMISSED**.

### 8. Conspiracy to Oppress

In his claim for relief Plaintiff alleges that all of the defendants "did conspire with one another to oppress" him [Doc. 2 pp. 12–14]. Plaintiff sprinkled throughout his complaint allegations that he was being "abused and oppressed" at the prison. He alleges that Warden Lee and Sergeant McCracken did not want to talk to him after the altercation with White, which led Plaintiff to conclude that his "stay here would be very uncomfortable, unsafe" [Doc. 2 p. 9]. He complained to Ms. Britt about the "ill-mannered behavior and corruption being displayed towards [him] by the administration" [*Id.*]. He noted that both Assistant Warden Hampton and Unit Manager Walker also "expressed the same feelings" as McCracken and Warden Lee and did not want to talk to him, which made

it "very clear . . . that the administration was deliberately abusing, oppressing" him [*Id.* p. 10]. He also alleges that he was told by Case Manager Moody that he was going back to the SMU program because "Warden Lee is mad at you" [*Id.* p. 11]. Finally, he alleges he wrote to Commissioner Tony Parker about his "abuse" by Warden Lee and his staff but Commissioner Parker "concurred with the warden's behavior" [*Id.* p. 12].

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of a civil conspiracy in this case are conclusory and speculative. His allegations, even construed liberally, describe a number of discrete facts that occurred over a period of time involving numerous individuals at the prison. Plaintiff

has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference stemming from the mere fact that he has been subjected to objectionable treatment by a variety of prison officials in various circumstances, with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that, although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.

In light of the far more likely possibility that the various incidents to which Plaintiff objects were unrelated, he has failed to state a plausible § 1983 claim for conspiracy and this claim will be **DISMISSED**.

## III.    Motion for Counsel

Plaintiff has filed a motion to appoint counsel. The appointment of counsel in a civil rights case is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993). Rather, it is "a privilege that is justified only by exceptional circumstances." *Id*. at 606. The appointment of counsel is not appropriate when a pro se litigant's claims are frivolous or when the chances of success are extremely slim. *Id*. (citation omitted).

Upon consideration of Plaintiff's motion, his ability to represent himself, the record as a whole, and the issues and complexity of this case, the Court concludes that the

appointment of counsel is not warranted because there are no exceptional circumstances to justify appointing counsel at this time. *Lavado*, 992 F.2d at 605; *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Accordingly, the motion to appoint counsel [Doc. 3] is **DENIED without prejudice**.

## IV.  Conclusion

Based on the above, Plaintiff's motion to proceed in forma pauperis [Doc. 1] is **GRANTED**. Nonetheless, Plaintiff will be **ASSESSED** the filing fee of three hundred and fifty dollars ($350), and shall follow the procedures as outlined in this Order. This action will proceed only as to Plaintiff's Eight Amendment claim for deprivation of his right to personal safety against Defendants Lieutenant Bailey, Ms. Stiles, and Ms. Hathaway. All other claims and parties are **DISMISSED**.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendants Bailey, Stiles, and Hathaway. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty days of receipt of this Memorandum and Order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4. Plaintiff is forewarned that failure to timely return the completed service packets could jeopardize his prosecution of this action.

Defendants Bailey, Stiles, and Hathaway **SHALL** answer or otherwise respond to the complaint within twenty-one days from the date of service. If any Defendant fails to timely respond to the complaint, judgment by default may be entered against him or her.

Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

Plaintiff's motion to appoint counsel [Doc. 3] is **DENIED without prejudice**.

Finally, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. See Fed. R. App. P. 24.

**IT IS SO ORDERED**.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE